Hearing Date: June 17, 2015 at 3:00 p.m. (Eastern)
Objection Deadline: June 10, 2015

REED SMITH LLP
James C. McCarroll
Jordan W. Siev
Kurt F. Gwynne (pro hac vice)
599 Lexington Avenue
New York, NY 10022-7650
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email: jmccarroll@reedsmith.com
       jsiev@reedsmith.com
       kgwynne@reedsmith.com

*Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Aramid Entertainment Fund Limited, *et al.*, | Case No.: 14-11802 (SHL) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF HEARING ON MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION FOR AN ORDER PURSUANT TO SECTION 363(b) OF THE BANKRUPTCY CODE AUTHORIZING ARAMID ENTERTAINMENT FUND LIMITED (I) TO RELEASE ITS LIENS ON INCENTIVE FILMED ENTERTAINMENT, LLC'S MEMBERSHIP INTEREST IN SIERRA PICTURES LLC AND (II) TO CAUSE INCENTIVE FILMED ENTERTAINMENT, LLC TO CONSUMMATE THE <u>SIERRA TRANSACTION</u>**

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated May 27, 2015 (the "Motion") of Aramid Entertainment Fund Limited ("AEF"), Aramid Liquidating Trust, Ltd. ("ALTL") and Aramid Entertainment, Inc. ("AEI", together with ALTL and AEF, the "Debtors"), as debtors and debtors in possession will be held before the Honorable Sean H.

---

[1] The Debtors and, if applicable and known, the last four digits of their taxpayer identification numbers are as follows: Aramid Entertainment Fund Limited; Aramid Liquidating Trust, Ltd. (f/k/a Aramid Entertainment Participation Fund Limited); and Aramid Entertainment, Inc. (0704). The Debtors' U.S. address is c/o Kinetic Partners, 675 Third Avenue, 21st Floor, New York, NY 10017.

Lane, United States Bankruptcy Judge, in Room 701 of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), One Bowling Green, New York, New York 10004, on **June 17, 2015 at 3:00 p.m. (Eastern)**, or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the Motion (the "Objections") shall be filed electronically with the Court on the docket of *In re Aramid Entertainment Fund Limited, et al.*, Ch. 11 Case No. 14-11802 (SHL), pursuant to the Court's General Order M-399 (available at http://nysb.uscourts.gov/orders/orders2.html), by registered users of the Court's case filing system and by all other parties in interest on a 3.5 inch disk, preferably in portable document format, Microsoft Word, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 on (i) counsel for the Debtors, Reed Smith LLP, 599 Lexington Avenue, New York, New York 10022-7650 (Attn: James C. McCarroll, Esq. and Kurt F. Gwynne, Esq.); (ii) counsel for Sierra, Harder Mirell & Abrams, 1925 Century Park East, Suite 800, Los Angeles, California 90067 (Attn: Jeffrey I. Abrams, Esq.) and (iii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Andrea Schwartz, Esq.); no later than **June 10, 2015 (the "Objection Deadline")**.

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard.

| | |
|---|---|
| Dated: May 27, 2015<br>New York, New York | Respectfully submitted,<br><br>REED SMITH LLP<br><br>/s/ James C. McCarroll<br>James C. McCarroll<br>Jordan W. Siev<br>Kurt F. Gwynne (pro hac vice)<br>599 Lexington Avenue<br>New York, NY  10022-7650<br>Telephone:  (212) 521-5400<br>Facsimile:  (212) 521-5450<br>Email: jmccarroll@reedsmith.com<br>         jsiev@reedsmith.com<br>         kgwynne@reedsmith.com<br><br>Counsel to the Debtors and<br>Debtors in Possession |

**Hearing Date: June 17, 2015 at 3:00 p.m. (Eastern)**
**Objection Deadline: June 10, 2015**

REED SMITH LLP
James C. McCarroll
Jordan W. Siev
Kurt F. Gwynne (pro hac vice)
599 Lexington Avenue
New York, NY 10022-7650
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email: jmccarroll@reedsmith.com
       jsiev@reedsmith.com
       kgwynne@reedsmith.com

*Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Aramid Entertainment Fund Limited, *et al.*, | Case No.: 14-11802 (SHL) |
| Debtors.[1] | (Jointly Administered) |

**MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION FOR AN ORDER PURSUANT TO SECTION 363(b) OF THE BANKRUPTCY CODE AUTHORIZING ARAMID ENTERTAINMENT FUND LIMITED (I) TO RELEASE ITS LIENS ON INCENTIVE FILMED ENTERTAINMENT, LLC'S MEMBERSHIP INTEREST IN SIERRA PICTURES LLC AND (II) TO CAUSE INCENTIVE FILMED ENTERTAINMENT, LLC TO CONSUMMATE THE SIERRA TRANSACTION**

Aramid Entertainment Fund Limited ("AEF"), Aramid Liquidating Trust, Ltd. ("ALTL") and Aramid Entertainment, Inc. ("AEI", together with ALTL and AEF, the "Debtors"), as debtors and debtors in possession under the control of Geoffrey Varga and Jess Shakespeare, the Joint Voluntary Liquidators (the "JVLs") appointed by AEF and ALTL pursuant to the laws of

---

[1]    The Debtors and, if applicable and known, the last four digits of their taxpayer identification numbers are as follows: Aramid Entertainment Fund Limited; Aramid Liquidating Trust, Ltd. (f/k/a Aramid Entertainment Participation Fund Limited); and Aramid Entertainment, Inc. (0704). The Debtors' U.S. address is c/o Kinetic Partners, 675 Third Avenue, 21st Floor, New York, NY 10017.

the Cayman Islands, file this motion (the "Motion") for entry of an order, pursuant to Section 363(b) of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") authorizing AEF (i) to release its liens on and security interests in a twenty percent (20%) membership interest in Sierra Pictures LLC ("Sierra") and (ii) to cause Incentive Filmed Entertainment, LLC ("IFE") to sell such membership interest back to Sierra. In support of the Motion, AEF respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.[2]

## FACTUAL BACKGROUND

A.  **AEF's Ownership Interest in IFE Equity, the Majority Member of IFE.**

2. AEF is an investment fund organized under the laws of the Cayman Islands that provided short and medium term liquidity to producers and distributors of media and entertainment assets through loans, equity investments and other financial investments.

3. AEF owns substantially all of the equity interests in IFE Equity Holdings, Inc. ("IFE Equity"), which in turn is a majority equity holder in IFE, a Delaware limited liability company. AEF is the manager of IFE.

4. IFE's members are (a) Screen Capital International Corp. ("SCI") (27% interest); (b) William Morris Independent, Inc. (10% interest); and (c) IFE Equity (63% interest).

---

[2] The Debtors consent to the entry of a final order or judgment by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

B.     **AEF's Junior Secured Loan to IFE**

5.     IFE and its subsidiaries are film production and financing companies that own the rights to several films, including without limitation, *Blue Valentine; Love & Other Impossible Pursuits; Shark Night 3D; Parker; Wer; Waist Deep; The Return; The Hitcher; Balls of Fury; Doomsday; Strangers;* and *Cold Light of Day*.

6.     On May 15, 2008, AEF, as lender, IFE, as borrower, and certain of IFE's subsidiaries (together with IFE, the "IFE Entities"), as guarantors, entered into a Subordinated Loan and Security Agreement (as amended on September 29, 2009, the "Loan Agreement") pursuant to which AEF loaned $22 million to IFE at a 15% per annum interest rate, which interest (subject to restrictions in the Intercreditor Agreement, as defined below) is payable quarterly (the "AEF Loan"). In connection with the AEF Loan, IFE executed and delivered to AEF a Subordinated Loan Note dated May 15, 2008.

7.     The AEF Loan originally was set to mature on November 30, 2014, but the maturity date was extended to November 30, 2016.

8.     As of April 28, 2014, the total balance of the AEF Loan was $43,971,754.58, including $22,000,000 in principal and accrued and unpaid interest in the amount of $21,971,754.58.

9.     Each of the IFE Entities granted security interests to AEF in substantially all of their assets. See Loan Agreement at §§ 1.01 and 7.01 (incorporating definition of "Collateral" from the Credit, Security, Guaranty and Pledge Agreement, dated as of May 14, 2008, by and among IFE, as borrower, certain of IFE's subsidiaries, as guarantors, and JPMorgan Chase Bank, N.A. ("JPMorgan"), as Agent for the Lenders (the "Senior Loan Agreement")); Senior Loan Agreement at § 1 (defining "Collateral").

10. The Loan Agreement grants AEF a security interest in, *inter alia*, certain rights in films for which any of the IFE Entities was the copyright owner or in which any of the IFE Entities acquired an equity interest or distribution right. See Loan Agreement at § 7.01; Senior Loan Agreement at § 1. AEF's security interest attaches to the IFE Entities' rights to, among other things, scripts, copyrights, musical rights, merchandising rights, distribution rights and profits in any motion picture of film. See Loan Agreement at § 7.01; Senior Loan Agreement at § 1.

11. AEF holds a security interest in the IFE Entities' rights to several films or cash receipts relating thereto, including without limitation *Blue Valentine; Love & Other Impossible Pursuits; Shark Night 3D; Parker; Wer; Waist Deep; The Return; The Hitcher; Balls of Fury; Doomsday; Strangers;* and *Cold Light of Day.*

12. In 2010, IFE purchased a 20% membership interest in Sierra (the "Membership Interest"). Concurrently with IFE's purchase, IFE entered into a management services agreement with Sierra whereby, among other things, Sierra would act as a source for new projects and as a sales agent.

13. AEF also holds a security interest in rights IFE acquired by virtue of its 20% equity interest in Sierra Pictures. See Loan Agreement at § 7.01; Senior Loan Agreement at § 1.

C.  **JP Morgan's Senior Secured Loan Facility to IFE**

14. On May 15, 2008, JP Morgan (as agent) and IFE entered into the Senior Loan Agreement. Pursuant to the Senior Loan Agreement, JP Morgan and other lenders provided IFE with a $70,000,000 revolving line of credit (the "Revolver").[3]

---

[3] On or about May 15, 2008, IFE, JP Morgan and AEF entered into a Subordination and Intercreditor Agreement (the "Intercreditor Agreement"). Pursuant to the Intercreditor Agreement, AEF subordinated its security interest and rights of payment to the senior secured Revolver.

15. On or about May 15, 2008, IFE, JP Morgan and AEF entered into a Subordination and Intercreditor Agreement (the "Intercreditor Agreement"). Pursuant to the Intercreditor Agreement, AEF subordinated its security interest and rights of payment to the senior secured Revolver.

16. As of December 31, 2012, $53,500,000 was outstanding under the Revolver.

17. The Revolver was set to mature on November 30, 2014, but the maturity date was extended until February 28, 2014, and then to December 31, 2014. The Revolver commitment was reduced to $11.5 million in March 2014 (the amount then outstanding) when the maturity date was extended.

18. As of the date of this Motion, the balance of the Revolver is approximately $4.8 million (including any accrued interest). To close the proposed Seer Transaction (as defined below), the IFE Entities negotiated further extensions of the maturity date of the senior secured Revolver to January 31, 2015, and then to February 28, 2015.

**D.    The IFE Entities' Prior Efforts to Sell their Assets**

19. Since December of 2012, IFE's management has conducted a process with multiple potential counterparties (including institutional investors, strategic corporate partners, and high net worth individuals) designed to sell the IFE Entities' assets, obtain equity or debt capital, or contribute them to some form of merger. After months of discussion and due diligence which began in early 2014, Seer Capital Partners Master Fund, L.P. ("Seer") issued a term sheet on or about September 30, 2014, to acquire the IFE Entities' assets. After further extensive negotiations with Seer, and with the senior secured Revolver set to mature on December 31, 2014, IFE elected to proceed with the proposed transaction with Seer.

20. Seer proposed to purchase all or substantially all of the assets of the IFE Entities (the "Seer Transaction"). The assets to be acquired by Seer in the Seer Transaction included the

Membership Interest and the IFE Entities' film library (including twelve (12) motion pictures and related rights).[4]

21. The proposed purchase price (subject to negative adjustment for net cash collected after August 1, 2014) in the Seer Transaction was $9.0 million in cash as closing (plus a share of other future audit proceeds in an undetermined amount). The Seer Transaction required (i) the release of AEF's liens on the assets that Seer seeks to acquire and (ii) the transfer of the Membership Interest. Assuming a January 31, 2015 closing, after the net cash receipts adjustment to the purchase price, the payment of the outstanding balance of the senior secured Revolver, and the payment of projected transaction costs, AEF expected to recover approximately $3,176,258 on the AEF Loan.

22. By entry of an Order dated January 15, 2015, this Court approved the Seer Transaction and authorized AEF to compromise its lien rights in exchange for at least $3,176,000. See Order Granting Debtors' Motion Pursuant to Section 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 Approving Compromise Relating to Incentive Filmed Entertainment, LLC Transaction (the "Bankruptcy Court Approval Order") [Dkt. Item #257].

23. Nick Meyer ("Meyer") is the managing member of Sierra. Meyer holds sixty eight percent (68%), a majority, of the membership interests in Sierra. Meyer and the other member of Sierra have certain consent rights with respect to the transfer of the Membership Interest pursuant to Sierra's Amended and Restated Operating Agreement (the "Operating Agreement"). See Operating Agreement at § 7. Absent IFE's agreement to increase the compensation paid to Meyer above the compensation provided for him in the Operating

---

[4] The IFE Entities' film library is not being sold or transferred pursuant to this Motion. IFE is continuing to negotiate the sale of the film library with potential purchasers.

Agreement, Meyer refused to consent to IFE's transfer of the Membership Interest to Seer. See Operating Agreement at §§ 3.6, 4.6.1(i), 4.6.3(d) and 7 of the Operating Agreement. AEF did not agree to such additional compensation because it would negatively affect the value of the Membership Interest.

24. Seer refused to close without the Membership Interest unless the purchase price was reduced by $2.0 million, which meant that AEF would have a $2.0 million shortfall below the $3.176 million in minimum proceeds set forth in the Bankruptcy Court Approval Order.[5]

### E.    The Proposed Sierra Transaction

25. Based on negotiations with Meyer and Sierra, AEF has negotiated an agreement (subject to Bankruptcy Court approval) to sell the Membership Interest back to Sierra for up to $2.0 million in consideration pursuant to that certain Purchase Agreement dated April 29, 2015 (the "Agreement").

26. As set forth in the Agreement, Sierra agreed to purchase the Membership Interest for up to $2.0 million (the "Purchase Price"), payable as follows: (a) $300,000 in cash at closing; (b) $1.45 million pursuant to a three-year promissory note dated April 29, 2015, from Sierra payable to IFE (the "Note"); and (c) up to but not exceeding $250,000 of the Purchase Price shall be paid through Sierra's assignment to IFE of all right, title and interest in commissions and royalties due to Sierra from the following films: *Shark Night 3D, Parker and Wer* (collectively, the "Assigned Commissions") until the earlier of the third anniversary of the Agreement or the date on which payments on the Assigned Commissions from and after the date of the Agreement

---

[5] Based on additional purchase price adjustments requested by Seer, which further reduced the consideration payable to the estate well below the minimum $3.176 million required by the Bankruptcy Court Approval Order, the Debtors have not closed the Seer Transaction. The Debtors are continuing to negotiate a sale of the other assets (motion pictures and guild deposits) that were involved in the Seer Transaction.

equal $250,000. The sale of the Membership Interest from IFE to Sierra pursuant to the Agreement shall be referred to as the "Sierra Transaction."

27. The Note provides for the payment of One Million Four Hundred Fifty Thousand Dollars ($1,450,000) in four (4) installments as follows: (i) first installment on August 19, 2015, in the amount of Two Hundred Thousand Dollars ($200,000) and (ii) three (3) annual installments on the first, second and third anniversaries of the date of the Note in the principal amounts of $416,667, $416,667 and $416,666, respectively.

28. Upon the occurrence of an Event of Default (as defined in the Note), IFE or its assignee shall be entitled to elect to receive, in lieu of any money otherwise due under the Note, a membership interest in Sierra representing 0.50% of all membership interests (as of February 1, 2015) in Sierra for each $50,000 of unpaid principal as of the date of the Event of Default. If IFE does not timely make such election, the sole remedy of IFE or its assignee shall be to seek recovery of the amounts under the Note.

29. The Agreement is conditioned upon the release of AEF and JPMorgan's respective liens on and security interests in the Membership Interest.

## RELIEF REQUESTED

30. AEF seeks an order authorizing it (i) to release its liens and security interests against the Membership Interest and (ii) to cause IFE to consummate the Sierra Transaction pursuant to the Agreement for up to $2.0 million payable as follows: (a) $300,000 in cash at closing; (b) $1.45 million pursuant to the Note; and (c) up to but not exceeding $250,000 of the Purchase Price through Sierra's assignment to IFE of the Assigned Commissions until the earlier of the third anniversary of the Agreement or the date on which payments on the Assigned Commissions from and after the date of the Agreement equal $250,000.

## BASIS FOR RELIEF REQUESTED

31. Section 363(b) of the Bankruptcy Code provides that the debtor "may use, sell, or lease, other than in the ordinary course of business, property of the estate …." 11 U.S.C. § 363(b).

32. "The Bankruptcy Code is designed to allow a debtor-in-possession the flexibility to engage in ordinary transactions without unneeded oversight by creditors or the court, while at the same time giving creditors an opportunity to contest those transactions that are not ordinary." See In re Dana Corp., 358 B.R. 567, 580 (Bankr. S.D.N.Y. 2006).

33. Section 363(c)(1) of the Bankruptcy Code authorizes a debtor-in-possession to enter into transactions involving property of the estate within the ordinary course of business without notice or a hearing. Where the transaction is outside the ordinary course of the debtor's business, however, the debtor may not "use, sell, or lease" estate property until creditors and other interested parties are given notice of the proposed transaction and the opportunity for a hearing if they object. 11 U.S.C. § 363(b)(1); see In re Leslie Fay Companies, Inc., 168 B.R. 294, 301 (Bankr. S.D.N.Y. 1994). "'Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.'" Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne), 114 F.3d 379, 384 (2d Cir. 1997) (quoting In re Roth American, 975 F.2d 949, 952 (3d Cir. 1992)) (alteration in original).

34. "Neither the Bankruptcy Code nor its legislative history provides guidance as to whether a particular transaction was conducted in the ordinary course of business." Chaney v. Official Comm. of Unsecured Creditors (In re Crystal Apparel, Inc.), 207 B.R. 406, 409 (S.D.N.Y. 1997) (citation omitted). Courts apply a two-part test to determine whether a

transaction is within the ordinary course of business, namely, (1) the "creditor's expectation test" also known as the "vertical test," and (2) the "industry-wide test" also called the "horizontal test." Lavigne, 114 F.3d at 384 (citing In re Roth American, 975 F.2d at 952-53; In re Dant & Russell, 853 F.2d 700, 704-05 (9th Cir. 1988); In re Coordinated Apparel, 179 B.R. 40, 43 (Bankr. S.D.N.Y. 1995); In re The Leslie Fay Companies, 168 B.R. at 304; In re The Drexel Burnham Lambert Group, 157 B.R. 532, 537-38 (Bankr. S.D.N.Y. 1993)).

35. As to the vertical test, the inquiry "analyzes the transactions 'from the vantage point of a hypothetical creditor and [the inquiry is] whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit.'" In re Velo Holdings, Inc., 472 B.R. 201, 212 (Bankr. S.D.N.Y. 2012) (quoting Crystal Apparel, Inc., 207 B.R. at 409). The vertical test "reviews the transaction from the perspective of creditors, asking whether the transaction is one that creditors would reasonably expect the debtor or trustee to enter into." Id. (citation omitted).

36. As to the horizontal test, the inquiry is "whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry." Id. at 211-12 (citing Crystal Apparel, 207 B.R. at 409). The horizontal test "is aimed at determining whether the transaction is abnormal or unusual, in which case it is probably not in the ordinary course of business, or whether it is a reasonably common type of transaction." Id. at 212 (citation omitted).

37. "'Under this two-part analysis, 'the touchstone of ordinariness is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business.'" Lavigne, 114 F.3d at 384-85 (quoting In re The Drexel Burnham Lambert Group, 157 B.R. at 537.

38. AEF's business prior to the Petition Date was to provide secured loans to producers and distributors of motion pictures. The release of liens and security interests in a sale of collateral in exchange for the sale proceeds is common in all types of financing. Accordingly, AEF believes that the release of its liens on and security interests in the Membership Interest as part of the Sierra Transaction may be within the ordinary course of its business under the horizontal and vertical tests. AEF, however, believes that it is prudent to seek Court approval pursuant to Section 363(b) of the Bankruptcy Code. Moreover, the proposed purchaser, Sierra, desires Court approval of the Sierra Transaction.

39. In the instant case, the release of AEF's liens on and security interests in the Membership Interest pursuant to the Sierra Transaction will maximize creditor recoveries in these cases by monetizing the certain collateral securing the AEF Loan for the benefit of AEF's creditors. In addition, as the original proposed transaction with Seer (on the terms approved in the Bankruptcy Court Approval Order) is no longer an option for the Debtors, absent approval of the Sierra Transaction, AEF may be unable to monetize its interest in Sierra as the senior debt to JPMorgan is overdue. AEF, in its business judgment and in consultation with its legal and financial advisors, determined that AEF's release of its liens and security interests in the Membership Interest to allow IFE to complete the Sierra Transaction provides the best available method to maximize the value of the AEF's estate for the benefit of AEF's creditors.

40. For the foregoing reasons, AEF seeks authority (i) to release its liens on and security interests in the Membership Interest and (ii) to authorize AEF, as the manager of IFE, to cause IFE to consummate the Sierra Transaction.

## NO PRIOR REQUEST

41.     No prior request for the relief requested herein has been made to this or any other court.

## NOTICE

42.     The Debtors have provided notice of filing of the Motion by electronic mail, facsimile or overnight mail to (i) Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Room 1006, New York, New York 10014 (Attn: Andrea B. Schwartz, Esq.); (ii) counsel for Sierra, Harder Mirell & Abrams, 1925 Century Park East, Suite 800, Los Angeles, California 90067 (Attn: Jeffrey I. Abrams, Esq.) and (iii) all parties requesting notice of the proceedings in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

WHEREFORE, for the reasons set forth above, the Debtors respectfully request that the Court enter an Order (a) granting the Motion, (b) authorizing AEF (i) to release its liens and security interests in the Membership Interest and (ii) to cause IFE to consummate the Sierra Transaction as set forth in the Agreement, and (c) granting such further relief to the Debtors as is appropriate.

Dated: May 27, 2015
New York, New York

Respectfully submitted,

REED SMITH LLP

/s/ James C. McCarroll
James C. McCarroll
Jordan W. Siev
Kurt F. Gwynne (pro hac vice)
599 Lexington Avenue
New York, NY 10022-7650
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email: jmccarroll@reedsmith.com
       jsiev@reedsmith.com
       kgwynne@reedsmith.com

*Counsel for the Debtors and Debtors in Possession*