**Hearing:  March 12, 2018 at 11:00 A.M. (Eastern)**
**Objection Deadline:  February 26, 2018**

REED SMITH LLP
James C. McCarroll
Jordan W. Siev
Kurt F. Gwynne (pro hac vice)
599 Lexington Avenue
New York, NY  10022-7650
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450
Email: jmccarroll@reedsmith.com
       jsiev@reedsmith.com
       kgwynne@reedsmith.com

*Counsel for the Aramid Distribution Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Aramid Entertainment Fund Limited, *et al.*, | Case No.:  14-11802 (SHL) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF ARAMID DISTRIBUTION TRUST TO MOTION OF DAVID MOLNER FOR CLARIFICATION AND/OR RELIEF FROM STAY FROM THE PARTIES' SO ORDERED MAY 10, 2016 AGREEMENT TO ARBITRATE**

The Aramid Distribution Trust (the "Trust"), by and through its counsel, objects (this "Objection") to the Motion of David Molner ("DM") for Clarification and/or Relief from the Parties' So Ordered May 10, 2016 Agreement to Arbitrate (Dkt. #932) (the "Motion to Modify Consent Order").  In support of the Objection, the Trust submits the Declaration of Jordan W. Siev in Support of the Objection (the "Siev Declaration"), filed contemporaneously herewith, and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The above-captioned debtors (the "Debtors") objected to the indemnification claims (as amended, the "Proofs of Claim") filed by DM, Aramid Capital Partners LLP, Asset Resolution Partners, Ltd., Genco Capital Corporation, and Screen

Capital International Corp. (collectively, the "Molner Parties"). Shortly thereafter, the Debtors commenced an adversary proceeding against the Molner Parties, asserting claims for fraud, gross negligence and unjust enrichment (the "Adversary Proceeding").

2. The Molner Parties filed a motion to compel arbitration of the Debtors' claims asserted in the Adversary Proceeding. The Molner Parties did not seek to compel arbitration of the objections to their Proofs of Claim. In fact, the Molner Parties requested that this Court stay its ruling on the Proofs of Claim until after the conclusion of arbitration.

3. After some negotiation, the Molner Parties and the Trust executed a letter agreement dated May 10, 2016, which was "so ordered" by this Court (the "Consent Order"). The Consent Order essentially provided the Molner Parties with the relief they requested: The Trust's claims against the Molner Parties would be arbitrated (the "Arbitration") before the London Court of International Arbitration ("LCIA") and, thereafter, the parties would resolve in this Court the Trust's objections to the Proofs of Claim, which are "core" matters.

4. Now, DM apparently is unhappy with the pace and scope of the LCIA proceeding, which he demanded, which he agreed to pursuant to the Consent Order and which *DM* unjustifiably delayed, resulting in a monetary sanction being imposed against him. He thus seeks to rewrite the Consent Order to provide for the resolution of his indemnification claims in the LCIA.

5. Equally as troubling, DM seeks to circumvent the injunction set forth in the Plan (as defined below) and Confirmation Order (as defined below) by compelling

2

payment of his indemnification claim due to the delay in the LCIA proceeding, which he moved to compel.

6.  DM cannot sidestep the injunctions or satisfy the heavy burden required to modify the Consent Order. Therefore, this Court should deny the Motion.

## FACTUAL BACKGROUND

### A.  The Debtors' Objections to the Molner Parties' Proofs of Claim

7.  On October 30, 2015, the Debtors filed the following objections (the "Claim Objections") to the Molner Parties' Proofs of Claim:

   a.  Debtors' Objection to Proofs of Claim Filed by DM (Dkt. #521);

   b.  Debtors' Objection to Proofs of Claim Filed by Aramid Capital Partners LLP (Dkt. #522);

   c.  Debtors' Objection to Proofs of Claim Filed by Asset Resolution Partners, Ltd. (Dkt. #523);

   d.  Debtors' Objection to Proofs of Claim Filed by Genco Capital Corporation (Dkt. #524); and

   e.  Debtors' Objection to Proofs of Claim Filed by Screen Capital International Corp. (Dkt. #525)

8.  The Debtors objected to the Proofs of Claim because (i) the Molner Parties were not entitled to indemnification due to their gross misconduct, (ii) the claims contained insufficient documentation, (iii) the claims were duplicative, (iv) the claims were not allowable under 11 U.S.C. § 502(e)(1)(B), (v) the claims should be equitably subordinated under 11 U.S.C. § 510(c), and (vi) the claims should be equitably disallowed.

### B. The Adversary Proceeding Against the Molner Parties

9. On January 9, 2016, the Debtors filed a Complaint and Jury Demand against certain members of the Molner Parties, captioned *Aramid Entertainment Fund Ltd. v. David Molner, Aramid Capital Partners LLP; Screen Capital International Corp. and Genco Capital Corp.*, Adv. Pro. #16-01025-shl (Adv. Dkt. #1) (the "Complaint"), thereby commencing the Adversary Proceeding.

10. In the Complaint, the Debtors asserted claims against the Molner Parties for (i) breach of fiduciary duty, (ii) gross negligence, and (iii) unjust enrichment.

### C. The Molner Parties' Motion to Compel Arbitration

11. The Molner Parties opposed litigating the Complaint before this Court. Instead, on April 1, 2016, the Molner Parties moved to compel the Arbitration before the LCIA. *See* Defendants' Motion to Compel Mandatory Arbitration Pursuant to Contract (Adv. Dkt. #9) (the "Motion to Compel Arbitration").

12. The Molner Parties contended that this Court should stay adjudication of the non-arbitrable Proofs of Claim until after the conclusion of the Arbitration. *See* Motion to Compel Arbitration at ¶¶ 78 ("The Court should stay adjudication of Defendants' Proofs of Claim until this action is resolved in the LCIA.") and 81 ("As a result, this Court should exercise its discretion to stay its determination with regard to Defendants' Proofs of Claim until the conclusion of the arbitration.").

13. The Molner Parties also asserted that "adjudication of the LCIA arbitration will be relatively efficient—likely being completed within 12 or, at most, 18 months." Motion to Compel Arbitration at ¶ 79.

14. On May 4, 2016, the Trust (as successor in interest to the Debtors) opposed the Motion to Compel Arbitration. *See* Aramid Distribution Trust's Opposition to Defendants' Motion to Compel Arbitration (Adv. Dkt. #11) (the "Trust's Opposition"). The Trust opposed the Motion to Compel Arbitration and disputed the Molner Parties' assertion that the Arbitration would be "relatively efficient" compared to litigation before this Court, which had significant knowledge regarding the factual background. Specifically, the Trust asserted that the Arbitration "*would require significant time, expense and delay* for a neutral evaluator to become sufficiently familiar with the matter in order to achieve a just resolution." *See* Trust's Opposition at 23 (emphasis added).

15. Due to concern regarding the time, expense and delay associated with the Arbitration, the Trust also opposed any stay of the Claim Objections pending in this Court. *See* Trust's Opposition at 32 ("This Court should not impose any such stay."); at 33 ("Accordingly, even if this Court requires AEF to arbitrate the Adversary Proceeding with any of Defendants (which it should not), there is no basis to stay (i) proceedings relating to the Proofs of Claim.").

16. Undeterred by the Trust's Opposition, the Molner Parties pressed forward with their Motion to Compel Arbitration. On May 6, 2016, the Molner Parties filed their Reply in Support of the Motion to Compel Arbitration (Adv. Dkt. #15) (the "Reply"). The Molner Parties again requested that this Court stay litigation regarding the Claim Objections. *See* Reply at ¶ 56 ("this Court should exercise its discretion to stay its determination with regard to Defendants' Proofs of Claim until the conclusion of the arbitration").

**D.    The Consent Order**

17. After negotiation, the Molner Parties and the Trust agreed in the Consent Order to resolve the disputed issues concerning the Motion to Compel Arbitration. Jordan

5

W. Siev, Esquire, of Reed Smith LLP negotiated the terms of the Consent Order for the Trust, and Amnon Siegel, Esquire, of Miller Barondess LLP, negotiated the terms of the Consent Order for the Molner Parties. *See* Siev Declaration at ¶ 7.

18. The parties agreed that the Trust's claims in the "pending complaint" would "proceed in arbitration before the" LCIA and that the Adversary Proceeding would be "voluntarily dismissed by the Trust." *See* Consent Order at 1. "All matters related in any way to the complaint and/or the LCIA arbitration shall proceed exclusively before the LCIA." *See* Consent Order at 1.

19. The parties, however, also agreed that the Claim Objections would proceed *in this Court* after the Arbitration concluded. *See* Siev Declaration at ¶ 9. Specifically, the parties agreed that "the Trust's pending objections to each of the Defendants' claims in the pending chapter 11 Cases before this Court shall be held in abeyance pending final resolution of the arbitration before the LCIA." *See* Consent Order at 1.

20. At no time during the negotiations did Attorney Siegel request that the LCIA resolve the indemnification claims set forth in the Proofs of Claim. In fact, at all times during those negotiations, Attorney Siegel (consistent with the relief the Molner Parties sought in the Motion to Compel Arbitration) agreed that the Claim Objections would be resolved by this Court. *See* Siev Declaration at ¶¶ 12 and 14.

21. This Court "SO ORDERED" the parties' agreement. *See* Consent Order at 2.

### E. The Confirmation Order and Plan Injunction

22. On February 19, 2016, this Court entered the Findings of Fact, Conclusions of Law, and Order Confirming the Modified First Amended Joint Liquidating Plan of

6

Reorganization of the Debtors and Debtors in Possession dated January 28, 2016 (Dkt. #710) (the "Confirmation Order") confirming the Modified First Amended Joint Liquidating Plan of Reorganization of the Debtors and Debtors in Possession dated January 28, 2016 (Dkt. #667) (the "Plan") in the Debtors' jointly-administered Chapter 11 cases.

23.     The "Effective Date" (as defined in Section I.A.52 of the Plan) of confirmation of the Plan occurred on February 25, 2016. *See* Notice of Effective Date (Dkt. #718).

24.     The Plan provides that "[a]ll Claims against and Interests in the Debtors are deemed satisfied, waived and *released* as to the Debtors." *See* Plan at Art. III.B.2 (emphasis added). Article III.G.3.c of the Plan further provides that "[t]he Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any claims . . ., rights of contribution or *rights of indemnification released* pursuant to the Plan." *See* Plan at Art. III.G.3.c (emphasis added).

25.     Similarly, paragraph 43 of the Confirmation Order (Dkt. #710) provides that "[f]rom and after the Effective Date, all Persons, whether directly, derivatively or otherwise, are hereby *enjoined from the commencement or prosecution of* any claims . . ., rights of contribution or *rights of indemnification released* pursuant to the Plan[.]" *See* Confirmation Order at ¶ 43 (emphasis added). The Confirmation Order further provides that "*[o]n the Effective Date, all* settlements, compromises, *releases* (including, without limitation, the releases set forth in Sections III.G.3 of the Plan), waivers, discharges, exculpations, and injunctions set forth in the Plan *shall be effective and binding* on

7

Persons who may have had standing to assert any settled, compromised, released, waived, discharged, exculpated, or enjoined Causes of Action after the Effective Date." *See* Confirmation Order at ¶ 56 (emphasis added).

26.     Pursuant to the Plan, the Court retained jurisdiction, among other things, to "[a]llow, disallow, estimate, determine, liquidate, reduce, classify, reclassify, estimate or establish the priority or secured or unsecured status of any Claim . . ., including the . . . resolution of any objections to the amount, allowance, priority or classification of Claims[.]." *See* Plan at Art. VIII.(1).

### F.     The Motion to "Clarify" or "Modify" the Consent Order

27.     By the Motion to Modify Consent Order, DM seeks an order providing that the LCIA (a) may "decide the nature, extent and timing of [the Trust's] indemnification obligations to" the Molner Parties and (b) "shall further determine whether [the Trust] has any liability . . . to" the Molner Parties "based on the proofs of claim submitted" by the Molner Parties, "provided however that this Court shall retain jurisdiction over the final calculation of any amounts owing by" the Trust. *See* DM Proposed Order (Dkt. #932) at ¶¶ 2-3.

28.     According to DM, the Trust "should be made to pay now." *See* Affidavit of Plaintiff *Pro Se* David Molner in Support of His Motion for Clarification and/or Relief from Stay (the "DM Aff.") at 12.

29.     Notwithstanding the contrary terms of the Consent Order, the Plan and Confirmation Order, DM seeks to have all matters ("liability" and "nature, extent and timing" thereof) relating to the Proofs of Claim decided in the LCIA, except that DM

8

would propose that this Court handle the administrative, clerical task of adding up any amounts owed to the Molner Parties.

30.     For the reasons set forth below, this Court should deny the Motion to Modify Consent Order.

## OBJECTION

### A.     The Relief Requested by DM Is Contrary to the Consent Order.

31.     DM's demand that the Trust "should be made to pay now" (*see* DM Aff. at 12) starkly contrasts with his prior demands that resolution of the Claim Objections be stayed pending resolution of the Arbitration. Indeed, DM not only requested such relief, but the Trust agreed to it, and this Court "So Ordered" it. For this reason alone, the Motion to Modify Consent Order should be denied.

32.     But there is more. *DM* has significantly delayed the LCIA Arbitration. Specifically, for five (5) months from June through November of 2017, DM's counsel failed to respond to repeated requests from the Trust for information and to schedule proceedings. *See* Siev Declaration at ¶ 16. When pressed, DM's counsel stated that his client had failed to provide him with instructions in the matter due to DM's personal circumstances. *See id.*

33.     As a result, certain deadlines in the LCIA Arbitration were pushed off, to the point where -- when DM finally re-engaged in the LCIA Arbitration in November 2017 – the Trust was awarded a monetary sanction of $9,000 against DM for the Trust's "wasted costs" in chasing his counsel to respond to routine requests for information. *See* Siev Declaration at ¶ 17.

9

34. Thus, DM's seeming impatience with the fact that the Arbitration has not been resolved is, at least in part, attributable to his own conduct and should not be allowed to be used as an excuse to upset the agreement he freely negotiated.

35. Although DM claims that he seeks to "clarify" the Consent Order, he actually seeks to rewrite it.

36. DM claims that the reference in the Consent Order to "all matters related in way to the complaint and/or the LCIA arbitration" includes the indemnification claims set forth in the Proofs of Claim. *See* DM Aff. at 6-7.

37. DM is wrong. If the parties intended for the indemnification claims to be litigated in the Arbitration, then the parties would *not* have provided in the Consent Order for the resolution of the Claim Objections to take place after the conclusion of the Arbitration. The Proofs of Claim are *exclusively* for indemnification. Thus, the parties' agreement that the Objections would be resolved in this Court after conclusion of the Arbitration necessarily means that the Molner Parties' indemnification claims would be resolved in this Court. Before filing the Motion to Modify Consent Decree, the Molner Parties never contended otherwise.[1] *See* Siev Declaration at ¶¶ 12 and 14.

38. In fact, the Molner Parties **always** recognized that **this Court** was the proper forum to resolve the Proofs of Claim. *See* Motion to Compel Arbitration at *See* Motion to Compel Arbitration at ¶ 81 ("this Court should exercise its discretion to stay *its determination* with regard to Defendants' Proofs of Claim until the conclusion of the arbitration."); Reply at ¶ 56 ("this Court should exercise its discretion to stay *its*

10

*determination* with regard to Defendants' Proofs of Claim until the conclusion of the arbitration.").

39. At all relevant times, the Trust and the Molner Parties agreed that this Court was the proper forum to adjudicate the Proofs of Claim and the Claim Objections. The Consent Order simply deferred that adjudication until after the Arbitration. *See* Siev Declaration at ¶¶ 12 and 14.

40. The express preservation of the Claim Objections for resolution in this Court is contrary to the purported "clarification" now requested by DM. What DM really seeks is to rewrite or modify the Consent Order, not to "clarify" it.

41. The Plan provided for this Court's retention of jurisdiction to allow or disallow claims and to resolve objections to any claims. *See* Plan at Art. VIII.(1). The Consent Order also expressly reserved for this Court the resolution of the Claim Objections upon the conclusion of the Arbitration. The proper forum for the resolution of the Molner Parties' indemnification claims—a "core" proceeding under 28 U.S.C. § 158(b)(2)(B)—was, and still is, this Court.

**B.   DM Cannot Modify the Consent Order to Rewrite the Parties' Agreement.**

42. "A Stipulation and Order is a binding agreement between parties to a dispute which has been so ordered by the presiding court. When parties enter into a stipulation, the agreement is enforceable as a contract." *In re Royster Co.*, 132 B.R. 684, 689 (Bankr. S.D.N.Y. 1991); *Lafayette Steel Erectors. Inc. v. Roy Anderson Corporation*,

---

[1] While the Trust believes that the Consent Order is clear and unambiguous on its face, to the extent the Court requires any parol evidence on the parties' intent, the Siev Declaration makes clear that it was always the parties' intent that the indemnification claims asserted in the Proofs of Claim remain in this Court for resolution following the conclusion of the LCIA Arbitration. *See* Siev Declaration at ¶¶ 12 and 14.

11

71 F.Supp. 2d 582, 590 (S.D. Miss. 1997) ("stipulations are controlling and conclusive, resolving all factual issues according to their contents") (quoting *United States v. Texas*, 523 F.Supp. 703, 713 (E.D. Tex. 1981) (internal quotation marks omitted)).

43. "[T]he amendment of a consent decree is not favored. While a federal court has the authority to modify judgments due to changed circumstances, modification by the court should be exercised with special caution when the judgment at issue is a consent decree by the parties." *New York ex rel. Lockyer v. Bodman*, No. Civ. Act. 05CIV7807-JES, 2007 WL 3238763, at *3 (S.D.N.Y. Nov. 1, 2007).

44. "A party seeking relief from a stipulation agreement must meet a **very heavy burden** of proof." *Royster,* 132 B.R. at 689 (emphasis added) (citing *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986)). In fact, "[w]hen the parties submit to an agreed-upon disposition instead of seeking a resolution on the merits, . . . the burden to obtain Rule 60(b) relief is heavier than if one party proceeded to trial, lost, and failed to appeal." *Nemaizer*, 793 F.2d at 63.

45. "Generally this burden is only met upon the clear showing of a **grievous wrong** that has resulted from **unforeseen conditions**." *Id.* (emphasis added); s*ee generally United States v. Swift & Co.*, 286 U.S. 106, 119 (1932).

46. Here, DM cannot satisfy the very heavy burden of proof required to modify the Consent Order.

47. There is no "grievous wrong." Although the Arbitration may be taking longer than DM anticipated, he demanded the Arbitration and has, in fact, been the source of significant (and sanctionable) delay. *See* Siev Declaration at ¶¶ 16 and 17.

48. In an attempt to rewrite the history of the proceedings relating to his Motion to Compel Arbitration, DM now claims that the Trust "should not be allowed to prejudice me by deferring the impact of any such decision until years from now." *See* DM Aff. at 4. The Trust never sought to delay DM by deferring any decision on the Claim Objections. The Trust argued that this Court should move forward with resolution of the Claim Objections. As clearly set forth above, the Molner Parties demanded the delay in the resolution of the Claim Objections. Thus, there is no reasonable argument that the delay (significantly caused by *him*) associated with *his* chosen forum somehow imposed a "grievous wrong" upon DM.

49. Although DM claims that his epiphany regarding the delay associated with the Arbitration is "a material change in circumstances" (*see* DM Aff. at 12 n.15), that is incorrect. Nothing has changed except DM's awareness that the Trust was correct in opposing (i) the Arbitration based on the potential for delay and (ii) the stay of litigation regarding the Claim Objections. There are no "unforeseen circumstances."[2] In fact, as noted above, the only changed circumstance was DM's unexplained delay in the LCIA Arbitration. *See* Siev Declaration at ¶¶ 16 and 17.

50. DM demanded the Arbitration and the stay of litigation of the Objections even after the Trust pointed out that the Arbitration proceeding likely would delay claims resolution. *Compare* Trust's Opposition at 23 (arbitration "*would require significant time, expense and delay* for a neutral evaluator to become sufficiently familiar with the matter in

---

[2] Although DM claims that the Trust is "unfairly penalize[ing]" him by turning his right of indemnification into a "sword," *see* Motion to Modify Consent Order at 12, that is simply false. As he has done for many years, DM has decided to engage in all-out "scorched earth" litigation to avoid any responsibility for his clear wrongdoing. As also is typical of DM, his assertion that he is "unable to afford counsel in all these various forums" (*id.*) is unsupported by any financial disclosure.

13

order to achieve a just resolution") *with* Reply at ¶ 30 ("AEF provides no evidence that the LCIA will not be able to proceed with this case in an expeditious and efficient manner.").

51. Now, almost two years after agreeing to the Consent Order, DM has come to the realization that the Trust's concerns for undue delay were well-founded. *See* DM Aff. at 12 n.15 ("The average time of LCIA disputes is approximately 18 months. We are now facing an end-to-end process lasting twice as long (from June of 2016 to June of 2019.").[3]

52. Similarly, even after the Trust opposed a stay on litigating the Claim Objections, DM continued to demand that proceedings on the Claim Objections be stayed. *Compare* Trust's Opposition at 33 ("even if this Court requires AEF to arbitrate the Adversary Proceeding with any of Defendants (which it should not), there is no basis to stay (i) proceedings relating to the Proofs of Claim.") *with* Reply at ¶ 56 ("this Court should exercise its discretion to stay its determination with regard to Defendants' Proofs of Claim until the conclusion of the arbitration").

53. DM should have expected the potential for delay. Even if he did not expect it, the Trust brought it to his attention, and DM rejected the potential for any delay (before adding to it himself). Similarly, the Trust specifically requested that the Court proceed with litigation on the Claim Objections even if the parties arbitrated the Trust's claims. DM opposed that too on the basis that it would be inefficient. The fact that DM is unhappy with obtaining the precise relief *he* requested does not constitute grounds to

---

[3] Curiously, DM also asserts that "when the Parties agreed to hold the Claims in abeyance, the consent of the parties under my control was predicated upon a relatively swift dispute resolution process." *See* DM Aff. at 11. That is false. The Trust never sought the Molner Parties' consent to hold the claims in abeyance. As indicated, *supra*, the Molner Parties demanded that the Claim Objections be held in abeyance.

reverse field and rewrite the Consent Order to provide for an agreement to which the Trust would never have agreed,[4] especially when the basis for rewriting the Consent Order was not only anticipated, but was brought to DM's attention and then rejected by him.

54. DM obtained the relief that he sought in the Motion to Compel: The Adversary Proceeding was dismissed, and the Trust's claims were asserted in the Arbitration before the LCIA. The fact that DM now wants something else does not justify modifying the Consent Order.

55. In short, the relief sought by DM would be improper: "[S]uch an action on the part of the court would be unauthorized because it would rewrite the stipulation of settlement which has been approved." *Blatt v. Dean Witter Reynolds InterCapital Inc.*, 566 F. Supp. 1294, 1299 (S.D.N.Y. 1983), *aff'd*, 732 F.2d 304 (2d Cir. 1984).

### B. The Relief Requested by DM Is Barred by the Injunction Set Forth in the Confirmation Order.

56. DM seeks to eliminate this Court's role in the adjudication of the Claim Objections (which are "core" proceedings under 28 U.S.C. § 157(b)(2)(B)) by having the LCIA deal with the indemnification requested in the Proofs of Claims.

57. DM's current request to pursue his disputed indemnification claim in the Arbitration, however, is contrary to the injunction set forth in the Confirmation Order (to which none of the Molner Parties objected). The Confirmation Order specifically provides that, "[f]rom and after the Effective Date, all Persons . . . are hereby *enjoined from the commencement or prosecution of* any . . . *rights of indemnification* [.]" See Confirmation Order at ¶ 43 (emphasis added).

---

[4] The Trust never would have agreed to the Consent Order if it provided for the litigation of the Claim Objections in the LCIA. *See* Siev Declaration at ¶ 15.

15

58. As the relief DM seeks is expressly barred by the Plan and Confirmation Order, this Court should deny the Motion to Modify Consent Order.

### E. DM Cannot Represent the Other Molner Parties.

59. DM purportedly is representing himself and the other Molner Parties. DM, however, is not an attorney. *See* DM Aff. at 1 ("I am not an attorney."). Accordingly, DM cannot represent the other Molner Parties and has no authority to file a motion, or seek relief from this Court, on their behalf.[5]

60. As the United States Supreme Court has declared, "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993). "As the courts have recognized, the rationale for that rule applies equally to all artificial entities." *Id.* at 202.

61. Except for DM, all of the Molner Parties are artificial entities. Therefore, the Court should deny the Motion to Modify Consent Order with respect to all Molner Parties other than DM.

---

[5] Although the Motion to Modify Consent Order is titled only in the name of DM, the relief requested in the Proposed Order applies to all of the Molner Parties. *See* Proposed Order (Dkt. #932) at ¶¶ 2-3. DM is engaging in the unauthorized practice of law.

WHEREFORE, the Trust respectfully requests that the Court enter an Order (i) denying the Motion to Modify Consent Order and (ii) granting such further relief to the Trust as is appropriate.

Dated:  February 26, 2018  
New York, New York

Respectfully submitted,

REED SMITH LLP

*James C. McCarroll*  
James C. McCarroll  
Jordan W. Siev  
Kurt F. Gwynne  
599 Lexington Avenue  
New York, NY  10022-7650  
Telephone:  (212) 521-5400  
Facsimile:  (212) 521-5450  
Email:  jmccarroll@reedsmith.com  
            jsiev@reedsmith.com  
            kgwynne@reedsmith.com

*Counsel for the Aramid Distribution Trust*