REED SMITH LLP
James C. McCarroll
Jordan W. Siev
Kurt F. Gwynne (pro hac vice)
599 Lexington Avenue
New York, NY 10022-7650
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email: jmccarroll@reedsmith.com
       jsiev@reedsmith.com
       kgwynne@reedsmith.com

*Counsel for the Aramid Distribution Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Aramid Entertainment Fund Limited, *et al.*, | Case No.: 14-11802 (SHL) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF JORDAN W. SIEV IN SUPPORT OF ARAMID
DISTRIBUTION TRUST'S OBJECTION TO MOTION OF DAVID
MOLNER FOR CLARIFICATION AND/OR RELIEF FROM STAY FROM
THE PARTIES' SO ORDERED MAY 10, 2016 AGREEMENT TO ARBITRATE**

I, Jordan W. Siev, hereby declare as follows:

1. I am over 18 years of age and am competent to testify.

2. I am a partner in the law firm of Reed Smith LLP ("Reed Smith").

3. On January 16, 2018, David Molner ("DM") filed his Motion for Clarification and/or Relief from the Parties' So Ordered May 10, 2016 Agreement to Arbitrate (Dkt. #932) (the "Motion to Modify Consent Order").

4. I submit this Declaration in support of the Objection of the Aramid Distribution Trust (the "Trust") to the Motion to Modify Consent Order (the "Objection").[1]

5. The statements made in this Declaration are based upon my personal knowledge or my review of documents filed in the above-captioned bankruptcy cases or the Adversary Proceeding.

6. On behalf of the Trust, I negotiated the terms of the letter agreement dated May 10, 2016, which was "so ordered" by this Court (the "Consent Order").

7. I negotiated the terms of the Consent Order with Amnon Siegel, Esquire ("Attorney Siegel") of Miller Barondess LLP, who was counsel for DM, Aramid Capital Partners LLP, Asset Resolution Partners, Ltd., Genco Capital Corporation, and Screen Capital International Corp. (collectively, the "Molner Parties").

8. In the Consent Order, the Trust and the Molner Parties agreed that the Trust's claims in the "pending complaint" would "proceed in arbitration before the" LCIA and that the Adversary Proceeding would be "voluntarily dismissed by the Trust." *See* Consent Order at 1. "All matters related in any way to the complaint and/or the LCIA arbitration shall proceed exclusively before the LCIA." *See* Consent Order at 1.

9. The Trust and the Molner Parties, however, also agreed that the Claim Objections would proceed *in this Court* after the Arbitration concluded. Specifically, the Parties agreed that "the Trust's pending objections to each of the Defendants' claims in the pending chapter 11 Cases before this Court shall be held in abeyance pending final resolution of the arbitration before the LCIA." Consent Order at 1.

---

[1] Capitalized terms not defined in this Declaration shall have the meanings ascribed to such terms in the Objection.

2

10. This Court "SO ORDERED" the Parties' agreement. *See* Consent Order at 2.

11. The Consent Order essentially provided the Molner Parties with the relief they requested in their Motion to Compel Arbitration: (i) The Trust's claims against the Molner Parties would be arbitrated (the "Arbitration") before the London Court of International Arbitration ("LCIA") and (ii) thereafter, the Parties would resolve the Claim Objections in this Court.[2]

12. At no time during my negotiations with Attorney Siegel did he request that the LCIA resolve the indemnification claims set forth in the Proofs of Claim.[3] In fact, at all times during those negotiations, Attorney Siegel (consistent with the relief the Molner Parties sought in the Motion to Compel Arbitration) agreed that the Claim Objections would be resolved by this Court.[4]

13. Now, by the Motion to Modify Consent Order, DM seeks an order providing that the LCIA (a) may "decide the nature, extent and timing of [the Trust's] indemnification obligations to" the Molner Parties and (b) "shall further determine whether [the Trust] has any liability . . . to" the Molner Parties "based on the proofs of

---

[2] The Molner Parties contended that this Court should stay adjudication of the non-arbitrable Proofs of Claim until after the conclusion of the Arbitration. *See* Motion to Compel Arbitration at ¶¶ 78 ("The Court should stay adjudication of Defendants' Proofs of Claim until this action is resolved in the LCIA.") and 81 ("As a result, this Court should exercise its discretion to stay its determination with regard to Defendants' Proofs of Claim until the conclusion of the arbitration."); Reply at ¶ 56 ("this Court should exercise its discretion to stay its determination with regard to Defendants' Proofs of Claim until the conclusion of the arbitration").

[3] The Proofs of Claim assert liquidated and contingent, unliquidated indemnification claims.

3

claim submitted" by the Molner Parties, "provided however that this Court shall retain jurisdiction over the final calculation of any amounts owing by" the Trust.  *See* DM Proposed Order (Dkt. #932) at ¶¶ 2-3.

14. At all relevant times, the Trust and the Molner Parties agreed that this Court was the proper forum to adjudicate the Proofs of Claim and the Claim Objections. The Consent Order simply deferred this Court's adjudication until after the Arbitration (as the Molner Parties requested in the Motion to Compel Arbitration).

15. The Trust would not have agreed (and did not agree) to resolve the Proofs of Claim before the LCIA as DM now requests in the Motion to Modify Consent Order.

16. DM's complaint regarding the pace of the Arbitration is belied by his own actions to delay the Arbitration.   Specifically, for five (5) months from June through November of 2017, DM's counsel failed to respond to repeated requests from the Trust for information and to schedule proceedings.  When pressed, DM's counsel stated that his client had failed to provide him with instructions in the matter due to DM's personal circumstances.

17. As a result of DM's disengagement from the Arbitration, certain deadlines in the LCIA Arbitration were pushed off, to the point where – when DM finally re-engaged in the LCIA Arbitration in November 2017 – the Trust was awarded a monetary sanction of $9,000 against DM for the Trust's "wasted costs" in chasing his counsel to respond to routine requests for information.

---

[4] In fact, the Molner Parties **always** recognized that **this Court** was the proper forum to resolve the Proofs of Claim.  *See* Motion to Compel Arbitration at *See* Motion to Compel Arbitration at ¶ 81 ("this Court should exercise its discretion to stay *its determination* with regard to Defendants' Proofs of Claim until the conclusion of the arbitration.") (emphasis added); Reply at ¶ 56 ("this Court should exercise its discretion to stay *its determination* with regard to Defendants' Proofs of Claim until the conclusion of the arbitration.") (emphasis added).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: February 26, 2018
New York, New York

                                                     By:   */s/ Jordan W. Siev*
                                                                 Jordan W. Siev, Esquire
                                                                 REED SMITH LLP

5